MANDELL
v.
BARRY.

The jury found a verdict that the plaintiff had no cause of ac-
tion, on which the justice gave judgment against the plaintiff for
the costs.

---

MANDELL, ASSIGNEE OF THE SHERIFF, &c. *against* BARRY
AND OTHERS.

The act of
the 5th April,
1810,(sess. 33.
c. 187.) is in-
tended only
for the relief of
the *sheriff*, co-
roner or other
*officer*, when
sued for an
escape.
Where an
action, there-
fore, is bro't
by the *as-
signee* of the
bond given to
the *sheriff*, on
granting the
*liberties of the
gaol*, against
the *original
debtor* and his
*sureties*, on
the bond, a
*voluntary re-
turn* after a
*voluntary es-
cape*, and before suit brought, is not a defence; and the *assignee* may recover the amount of the
debt in the original suit, though no suit has been brought against the sheriff for the escape.

IN ERROR, from the court of common pleas, or mayor's
court, of *Albany*.

The plaintiff in error, as assignee of the sheriff of *Albany*,
brought an action of debt, in the court below, against the defend-
ants, on a bail bond, executed by *Barry*, who had been taken
into custody of the sheriff, on a *ca. sa.*, and by *Harbeck* and
*Hewson*, his sureties, for the gaol liberties granted to *Barry*, by
the sheriff, pursuant to the act. The bond was in the usual form,
conditioned, that " if *Barry* should remain a true and faithful pri-
soner, within the liberties of the gaol, and should not at any time,
or in any wise, escape, or go without the limits of the gaol liber-
ties, until he should be thence discharged by due course of law,"
the obligation to be void, &c. The plaintiff averred that *Barry*
did not remain a true and faithful prisoner, &c. but that, after-
wards, on the 12th of *August*, &c. did escape and go without the

limits of the said liberties, and without being thence discharged by due course of law, &c. and that the sheriff, afterwards, assigned the bond to the plaintiff, according to the statute, &c. by reason whereof, &c.

The defendants pleaded, 1. *Non est factum;* 2. That *Barry* did remain a true and faithful prisoner, &c. with a verification; 3. That *Barry,* accidentally and inadvertently, and without intention to escape, stepped beyond the outline of the said liberties, which were bounded by an imaginary line of vague and uncertain description, not designated by posts and other visible marks; and did, afterwards, before the commencement of any suit against the sheriff, and before the assignment of the said bond, &c. voluntarily return within the liberties, &c. and hath ever since remained, and still remains, a true and faithful prisoner, &c. which is the same escape, &c. and this he is ready to verify, &c.

The plaintiff, protesting that *Barry* did escape, &c. and did not remain a true and faithful prisoner, *replied* to the second plea, that the said *Barry* did not remain a true and faithful prisoner, but did escape, &c. and on which issue to the country was joined. To the *third* plea, protesting that the matters therein contained were not sufficient in law, &c. the said *Barry,* without any such cause as the defendants in that plea alleged, did escape, &c. on which issue was also joined.

At the trial, the jury found a special verdict, from which it appeared that no suit had been brought against the sheriff for the escape, and the liberties were not, in the place where *Barry* escaped, marked by any visible boundaries, and that *Barry* stepped 6 or 8 feet beyond the limits, to drive a cow to the end of a yard, and returned within the limits, within five or ten minutes thereafter; but that he knew, at the time, what the limits were. And they found, also, as to the third issue, that *Barry* did escape, and without any such cause as is set forth in the defendants' plea, &c. and they assessed the damages to the whole amount of the original debt for which *Barry* was in custody. On this verdict, the court below gave judgment for the plaintiff.

*Henry,* for the plaintiff in error, contended, that the jury, in assessing the damages, ought not to have made the debt in the original suit the measure of assessment. The bond given to the sheriff is merely for his *indemnity;* * and the return of the prisoner, before

ALBANY,
August, 1812.

MANDELL
v.
BARRY.

* *2 Johns. Ca.* 205.

ALBANY,
August, 1812.

MANDELL
v.
BARRY.

\* 4 *Johns.*
*Rep.* 45.

action brought, is equivalent to a plea of *non damnificatus.* The act of the 28th *March,* 1809, (sess. 32. c. 148.) which was passed in consequence of the decision of this court, in *Tillman* v. *Lansing,*\* renders the bond given to the sheriff, for the gaol liberties, assignable ; and declares that the party to whom it is assigned, may maintain an action thereon as assignee, and recover the amount due in the original action. The design of this statute was to prevent circuity of action, and to stay the proceedings against the sheriff, until he had an opportunity of suing on the bond. But by the act of the 5th *April,* 1810, (sess. 33. c. 187.) sheriffs are restored to their common law defence of recaption, on fresh pursuit, and a returning of the prisoner within custody, before a suit is commenced for the escape, as fully as if the act relative to the gaol liberties, or making the bonds assignable, had never passed.

The rule of damages prescribed by the act of the 28th *March,* 1809, was to prevail, after the court had decided upon the absolute responsibility of the sheriff; but the act of 8th *April,* 1810, restoring the sheriff to his common law defence, is a virtual repeal of the rule of damages given by the former act. If such be not the interpretation, the sheriff, if sued for the escape, may avail himself of this defence at common law, and prevent any recovery against him ; and afterwards sue on the bond, and recover the whole amount of the original debt.

The assignee, in this case, cannot claim to be in a different or better situation than the assignor, or original obligee.

Again, this is the case of a *surety,* and the object of the bond is merely the *indemnity* of the sheriff. If the sheriff cannot, then, be damnified, ought the surety to be made liable on this bond, beyond the scope of his engagement ? The reason of the measure of damages given by the act of the 28th *March,* 1809, has ceased, and been virtually repealed. The maxim of the law *cessante ratione, cessat et ipsa lex,* is strictly applicable. By every rule of sound construction, such must be the operation of the act of *April* 5, 1810.†

It would be extremely hard, and unreasonable, in this case, to apply a rule of damages to the *surety,* and make him liable to the amount of the original debt, when it is not applied to the sheriff, in a suit against him. And how can an assignee possess greater or other rights, in regard to the subject assigned, than the assignor ?

I

*J. Hamilton*, contra, was stopped by the court.

ALBANY,
August, 1812.

MANDELL
v.
BARRY.

*Per Curiam.* The escape charged in the declaration, in the suit below, was found, by the special verdict, to have been voluntarily and intentionally made. This is the necessary and inevitable inference from the matters of fact found in respect to the second plea; and, as to the third plea, the jury expressly say, that the escape was made without any such cause as was set forth in that plea, that is, it was not " accidentally and inadvertently, and without intention to escape." The only question, then, arising upon the record is, whether a voluntary return, after a voluntary escape, and before suit brought, be a defence to a suit brought for such escape, by the assignee of the sheriff. The history of the several statutes upon this subject is, briefly, as follows:

By the act of 30th *March*, 1801, c. 91. gaol liberties were established, and prisoners were entitled to the benefit of them, on giving bond, with sufficient sureties, to the sheriff, that they would " remain true and faithful prisoners, and not, at any time, nor in any wise, escape." Under this act it was decided, in *Tillman* v. *Lansing*, (4 *Johns. Rep.* 45.) that the bond was forfeited after a voluntary escape, and that the sheriff (who alone was liable, under that act, to be sued by the plaintiff for the escape) could not plead a return before suit brought. The grounds of that decision the court see no reason to question. They were further considered and enforced by two of the judges of this court, in the case of *Dash* v. *Van Vleeck;* (7 *Johns. Rep.* 510.) and the provisions in the 2d and 3d sections of the act of 28th *March*, 1809, (c. 148.) were evidently made in consequence of, and in affirmance of that decision. The act of 1809, also, made these bonds, given for the gaol liberties, assignable to the plaintiff, and authorized him to sue as assignee of the sheriff. Nothing was done by this act to alter or enlarge the nature of the defence. The bond remained forfeited after a voluntary escape, and the remedy upon it complete, as under the act of 1801. But the act of 5th *April*, 1810, (sess. 33. c. 187.) made a new provision in respect to the defence in a suit against the sheriff, and enacted, " that nothing contained in the acts of 1801, or 1809, aforesaid, should be so construed as to prevent any sheriff, coroner, or other officer, in cases of escapes, from availing himself, as at common law, of a defence arising from a recaption on fresh pursuit, and a returning of the prisoner within the custody of such

ALBANY,
August, 1812.

MANDELL
v.
BARRY.

officer, before an action shall be commenced for the escape." The words of this act apply only to relieve the sheriff, coroner, or other officer, when they are sued for the escape. The act has no application to a suit upon the bond, either by the sheriff or by his assignee. It was made to relieve the officer, who may be an innocent party, and not the original debtor, who bound himself " to remain a true and faithful prisoner," and that he would " in no wise escape." If he has wilfully departed from the liberties, he has broken his engagement, and forfeited all just title to indulgence. The persons who became his sureties (and who were, probably, indemnified by him) must, and ought to, be equally responsible with the debtor, or otherwise the guard hereby intended against fraud would be illusory, and of no effect. They ought especially to be held so, when they join with him in his defence, for it would be impossible, and contrary to all rule, to allow to one defendant the plea of a voluntary return, and not to the other. The fact of *how long* the prisoner continued without the liberties, or *to what distance* he escaped, never can be material, when it is once ascertained that the escape was voluntary and intentional.

The court are perfectly satisfied that, according to the letter and spirit of the several statutes upon this subject, as well as upon principles of justice and sound policy, the party to the bond cannot set up as a defence to a breach of the bond for a voluntary escape, that the prisoner voluntarily returned before suit brought, and the judgment below must, accordingly, be affirmed.

Judgment affirmed.